## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**LONG POINT ENERGY, LLC,**

                **Plaintiff,**        **:**

                    **Case No. 2:20-cv-4644**
      **v.**                      **Judge Sarah D. Morrison**
                    **Magistrate Judge Kimberly A.**
                    **Jolson**

**GULFPORT ENERGY**
**CORPORATION,** *et al.,*        **:**

                **Defendants.**

### <u>OPINION AND ORDER</u>

This matter arises out of a dispute over the ownership of oil and gas rights underlying three tracts of land[1] in Belmont County, Ohio (collectively, "the Property"). Plaintiff Long Point Energy, LLC filed suit against the surface owners of the Property (collectively "Perkins Defendants"[2]) and several business entities that obtained oil and gas leases from those owners (collectively "Lessee Defendants"[3]) seeking, among other things, to quiet title to the disputed oil and gas rights. Counterclaims and a crossclaim have been filed.

---

[1] The three tracts of land at issue are an 80 Acre Tract, a 118 Acre Tract, and a 165 Acre Tract, the latter of which was subdivided into a 163.5 Acre Subdivision and a 1.15 Acre Subdivision.

[2] Perkins Defendants are Michael A. Perkins, Jill E. Perkins, Mitchell G. Perkins, Dedra D. Perkins, Phillip J. Perkins, Jackie M. Perkins, Nancy L. Garrison, and Robert Garrison.

[3] Lessee Defendants are Rice Drilling D LLC, Gulfport Energy Corporation, and Gulfport Appalachia LLC.

The following motions are before the Court:

- Perkins Defendants' Motion for Summary Judgment on Long Point's Claims and their Counterclaims and Crossclaim (ECF No. 103);

- Lessee Defendants' Motion for Summary Judgment on Long Point's Claims and their Counterclaims (ECF No. 104);

- Lessee Defendants' Motion for Summary Judgment on Perkins Defendants' Crossclaim (ECF No. 105);

- Long Point's Motion for Summary Judgment on their Claims and on the defendants' Counterclaims (ECF No. 107);

- Lessee Defendants' Motion to Strike Arguments (ECF No. 129).

The motions, which are limited to issues of liability, are fully briefed and ripe for consideration.

## I.   SUMMARY OF ARGUMENTS

This dispute stems from certain actions taken by the Perkins Defendants to recapture and put to use oil and gas rights that had been unproductive since they were severed from the Property and reserved by Berta Freudiger in 1948 (the "Freudiger Reservations").

Despite the actions taken by the Perkins Defendants, Long Point claims ownership of the Freudiger Reservations. More specifically, Long Point claims that, in 2019, it purchased from Ms. Freudiger's heirs full ownership of the oil and gas

2

rights underlying the 165 Acre Tract and 29/36ths ownership of the oil and gas rights underlying the 80 Acre and the 118 Acre Tracts.

On the other hand, all of the defendants claim that the Perkins Defendants are the true owners of the oil and gas rights underlying the Property and that Lessee Defendants own valid oil and gas leaseholds for each tract. They argue that the Freudiger Reservations did not include the oil and gas rights underlying the 165 Acre Tract. They further claim that the Freudiger Reservations were abandoned by Ms. Freudiger's heirs and vested in the Perkins Defendants through operation of the Dormant Minerals Act ("DMA") and/or a quiet title action several years before Long Point purchased them.

### A.     Succession of Interest in the Property

In 1948, Ms. Freudiger conveyed the 118 Acre Tract to Webster Perkins. (First Severance Deed, ECF No. 103-70.) That same year, she conveyed the 165 Acre and 80 Acre Tracts to Glenn and Ruth Perkins (Second Severance Deed, ECF No. 103-8.) Ms. Freudiger reserved certain oil and gas rights in each Severance Deed (*i.e.*, the Freudiger Reservations). The surface rights and the reserved oil and gas rights for the Property then went through multiple transfers. Today, it is undisputed that the Perkins Defendants collectively own the surface rights and any unreserved subsurface rights for the Property; the dispute is over the oil and gas rights reserved by Ms. Freudiger.

In 1962, Ms. Freudiger died testate and left the residue of her estate (including the Freudiger Reservations) to her daughter Martha Estell Zigler.[4] (ECF No. 99-11.) Following the deaths of Martha Zigler and one of her children, Ruth Kissinger and Gene Zigler each inherited a one-third interest and Delores Drabenstott, Paul Hershey, and Larry Hershey each inherited a one-ninth interest in the Freudiger Reservations (collectively "Freudiger Heirs"). (ECF Nos. 99-14 and 99-15.) In 2019, Long Point purchased the Freudiger Heirs' interest in the Freudiger Reservations for $40,000 via quit claim deed. (Long Point Deeds, ECF No. 107-1, Exhibits A-1 through A-5; Long Point Answers to Lessee Defendants' Interrogatories, ECF No. 104-8, No. 9.) The last of Long Point's deeds was recorded on September 27, 2019, and each was backdated to February 26, 2013. (*Id.*)

## B. Abandonment Procedures and Remora Conveyances

Many years before Long Point purchased the Freudiger Reservations, the Perkins Defendants learned of the Freudiger Reservations and hired title attorney Richard Yoss to attempt to reclaim the severed oil and gas interests. (Yoss Dep., ECF No. 99, p. 61.) Following a title search performed by Yoss, the Perkins Defendants initiated abandonment procedures under the DMA. [5]

---

[4] Probate records for Ms. Zigler were filed in Medina County, but no such records were filed in Belmont County until 2020. (Yoss Depo, ECF No. 99, PAGEID # 1404.)

[5] There are two versions of DMA: the 1989 version and the 2006 version. Until the Ohio Supreme Court clarified the matter in *Corban v. Chesapeake Expl., L.L.C.,* 149 Ohio St. 3d 512, 76 N.E.3d 1089 (2016), it was unclear which version of the Act applied to abandonment procedures in 2011. As such, Yoss sought to comply with procedures under both versions. (Yoss Depo, ECF No 99, PAGEID # 1502.)

The DMA requires notice of an abandonment claim to mineral rights holders by certified mail; if certified mail is not possible, then notice by publication is sufficient. Ohio. Rev. Code § 5301.56. After a public records search in Belmont County, Yoss was unable to locate addresses for Berta Freudiger or information about any potential heirs. (*Id.* at 331–32.) On June 9, 2011, the Perkins Defendants served notice of their abandonment claim in the Times Leader Newspaper (the local newspaper in Belmont County). (Notice by Publication, ECF No. 103-15.)

Shortly after notice was published, L.D. Jenkins informed several of the Freudiger Heirs about the Perkins Defendants' abandonment claim and represented that, if the Heirs conveyed a portion of their oil and gas rights to him, he would assist them in preserving those rights. (Larry Hershey Decl., ECF No. 103-43; Ruth Kissinger Decl., ECF No. 103-44; Gene Zigler Decl., ECF No. 103-45.). On August 5, 2011, three of the Freudiger Heirs (Gene Zigler, Ruth Kissinger, and Larry Hershey) conveyed to the Remora Parties[6] one-fourth of their ownership interests in the oil and gas underlying the 80 Acre and 118 Acre Tracts. (Remora Deeds, ECF No. 99-41.)

On August 8, 2011, sixty days after the Perkins Defendants' publication, William R. Parr recorded an "Affidavit; Claim to Preserve Mineral Interests and Oil and Gas Rights Interests," wherein he identified himself as the President of Willow Point Corporation and sought to preserve the Remora Parties' ownership of the oil

---

[6] The Remora parties are Remora LLC, L.D. Jenkins, and Willow Point Corporation.

5

and gas rights underlying the 80 Acre and 118 Acre Tracts. (Claim to Preserve, ECF No. 103-16.)

Yoss concluded that Parr's Claim to Preserve was not valid under the DMA. So, on August 29, 2011, he recorded a Notice of Failure to File to conclude the abandonment procedures; that notice referenced the Claim to Preserve and stated, "William R. Parr, affiant who signed the above Affidavit, is not a holder pursuant to [Ohio Revised Code §] 5301.56, and this Affidavit is therefore a nullity." (Notice of Failure to File, ECF No. 17.)

### C.     Belmont County Litigation

On October 7, 2011, the Perkins Defendants filed a state court action against the Remora Parties seeking a declaration that the severed oil and gas rights underlying the 80 Acre and 118 Acre Tracts were abandoned under the DMA and to quiet title to those properties. (Belmont County Court of Common Pleas Case No. 11-cv-400, ECF No. 103-18.) The parties to that suit entered into an Agreed Judgment, wherein the Remora Parties withdrew the ownership claims asserted in the Claim to Preserve. (Agreed Judgment Entry, ECF No. 103-20.) Also in the Agreed Judgment, the trial court held that the Freudiger Reservations were abandoned under the DMA and that the Perkins Defendants were the fee simple owners of both the surface rights and the underlying oil and gas rights for the 80 Acre and 118 Acre Tracts. (*Id.*) The court ordered the clerk of courts to record the Agreed Judgment and note the recordation in the margins of the Claim to Preserve and the First and Second Severance Deeds (the instruments that created the

Freudiger Reservations). (*Id.*) The Agreed Judgment was recorded on August 10, 2012.

### D.    Oil and Gas Leaseholds and Drilling Operations

On May 24, 2013, Rice Drilling obtained an oil and gas lease from the Perkins Defendants for the 80 Acre Tract, the 118 Acre Tract, and the 163.5 Acre Subdivision. (ECF No. 1-3, Exh. W.) On May 28, 2013, Rice Drilling obtained an identical oil and gas lease for the 1.15 Acre Subdivision. (ECF No. 1-3, Exh. X.) A Memorandum of Lease was recorded for each. (ECF No. 103-38, 103-39.)

Following a curative title search to confirm its interest, (ECF No. 103-23, 103-24), Rice Drilling assigned 51.84% of its interest in the oil and gas leases to Gulfport Corporation. (ECF Nos. 103-25, 103-26, 103-27, 103-28.) From 2014 until 2015, fourteen oil wells were constructed on the Property. (ECF No. 104-15.) The wells began producing in 2016. (ECF No. 103-74.)

### E.    Long Point Files this Action

In September 2020, less than a year after it recorded its final deed, Long Point filed the instant suit seeking over $24 million dollars in damages. (Long Point Initial Disclosures, ECF No. 104-11.) It brought the following claims against all of the defendants:

- Counts I and II—Declaratory Judgment and Quiet Title (165 Acre Tract)

- Counts III and IV—Declaratory Judgment and Quiet Title (80 Acre and 118 Acre Tracts)

- Count IX—Accounting of Rents and Profits (All Tracts)

- Count X—Unjust Enrichment and Equitable Disgorgement (All Tracts)

Against Lessee Defendants only, Long Point brought the following claims:

- Count V—Trespass (All Tracts)

- Count VI—Conversion (All Tracts)

- Counts VII and VIII—Waste (All Tracts)

In response, Perkins Defendants brought the following counterclaims:[7]

- Count I—Declaratory Judgment (165 Acre Tract)

- Count II—Declaratory Judgment pursuant to the Marketable Title Act ("MTA") (165 Acre Tract)

- Count V—Declaratory Judgment pursuant to the Dormant Minerals Act ("DMA") (80 Acre and 118 Acre Tracts)

- Count VI—Quiet Title (All Tracts)

In addition, Perkins Defendants brought an indemnification crossclaim against Lessee Defendants (Count VII).

Lessee Defendants brought the following counterclaims against Long Point:

- Counts I and II—Declaratory Judgment and Quiet Title (165 Acre Tract)

- Counts III and IV—Declaratory Judgment and Quiet Title pursuant to the MTA (1.15 Acre Subdivision)

---

[7] Perkins Defendants' Counts III and IV were voluntarily dismissed. (ECF No. 37.)

8

- Counts V and VI—Declaratory Judgment and Quiet Title pursuant to the DMA (80 Acre and 118 Acre Tracts)

- Count VII—Slander of Title (165 Acre Tract)

The parties have filed cross-motions for summary judgment on all claims, certain counterclaims,[8] and the crossclaim (ECF Nos. 103, 104, 105, and 107), and Lessee Defendants have moved to strike certain arguments made by Long Point (ECF No. 129).

The Court will address each motion, beginning with the motion to strike.

## II.    MOTION TO STRIKE

Lessee Defendants seek exclusion of Long Point's arguments relating to damages that are raised for the first time in Long Point's reply brief. (ECF No. 129.) Long Point responds that any references it made to damages were "typographical errors" and argues that the motion to strike was improperly filed under Fed. R. Civ. P. 12(f). (ECF No. 131, PAGEID # 4763.)

As this Court has previously explained, "a reply brief is not the proper place to raise an issue for the first time." *Helicopters v. City of Columbus*, 879 F. Supp. 2d 775, 779 (S.D. Ohio 2012) (Frost, J.). Because the Court agrees that these arguments are raised for the first time in Long Point's reply brief, the Court will not consider Long Point's new arguments.

Lessee Defendants' motion to strike is **GRANTED**.

_____

[8] The parties have filed cross motions for summary judgment on all counterclaims except for Lessee Defendants' slander of title claim (Count VII).

9

## III.    CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"When parties file cross-motions for summary judgment, the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001). A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). In other words, "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597–98 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### B.    Analysis

#### 1.    The Freudiger Reservations did not apply to the 165 Acre Tract.

Defendants argue that they are entitled to summary judgment on all claims and counterclaims involving the 165 Acre Tract because the Freudiger Reservations that Long Point purchased from the Freudiger Heirs did not include the oil and gas rights underlying that tract. (ECF No. 103, PAGEID # 2570–75; ECF No. 104, PAGEID # 3253–57.)

In Ohio, deeds (like other written instruments) "are to be interpreted so as to carry out the intent of the parties." *Wells v. Am. Elec. Power Co.,* 48 Ohio App. 3d 95, 97, 548 N.E.2d 995, 997 (1988). The best indication of intent arises from the words set forth in the deed. *Apel v. Katz,* 83 Ohio St.3d 11, 17, 697 N.E.2d 600, 605 (1998)."Where the language of the deed is unambiguous, its proper interpretation is a question of law to be resolved by the court without resort to extrinsic evidence." *Belville Min. Co. v. United States*, 999 F.2d 989, 995 (6th Cir. 1993) (citing *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 408, 374 N.E.2d 146, 150 (1978)).

11

In the Second Severance Deed, Ms. Freudiger conveyed to Gene and Ruth Perkins the 165 Acre and the 80 Acre Tracts (identified as "First Tract" and "Second Tract" respectively) as follows:

> **First Tract:**
> Being a part of Section Twenty-five (25) Township Five (5) Range Four (4) and beginning for the same at a stone marked A at the Northeast corner of said Section 25; thence West with North line of said Section 25, 10 rods to a stone in run; thence up said run, following the road making the middle of the road, the line, south 61.1/2° West 18.16 rods; thence South 68° West 11.28 rods to a small drain; thence North 74° West 23.80 rods; thence South 88° West 16 rods; thence North 49.1° West 9.88 rods to a stone in the North Section line, thence West 72.8 feet with North Section line to a stone at a wild cherry tree, thence South with Elizabeth Riley line about 160 rods to a stone; thence East 4 rods and 4 feet to a run; thence South about 160 rods to the south line of said Section 25; thence East 80 rods with the South line of said Section 25 to the South-east corner of said Section 25; thence North about 320 rods with eastern line of said Section 25 to the place of beginning, containing 165 acres more or less.
>
> Excepting from all of the above tract of land the No. 8 or Pittsburg vein of coal which has heretofore been conveyed by deed by Mathias and Ivey Noffsinger to Peter H. Hitchcock and Wm. D. Reese, together with mining rights and privileges conveyed by said deed of conveyance.
>
> **Second Tract:**
> Being the West half of the South-west quarter of Section Nineteen (19) Township Five (5) Range Four (4) in the district of lands subject to sale at Marietta, Ohio, containing 80 acres more or less.
>
> Excepting the six foot seam of coal together with mining rights and privileges conveyed by the coal deed.
>
> Excepting a right of way to Belmont Electric Cooperative Inc. for an electric power line and excepting a right of way to the Citizens Telephone Company for a telephone line and excepting all of the oil and gas and the right of leasing the same, together with customary surface privileges.

(Second Severance Deed, ECF No. 103-8.) To summarize, the Second Severance Deed includes, in the following order: (1) the legal description of the 165 Acre Tract, (2) the first coal deed exception, (3) the legal description of the 80 Acre Tract, (4) the second coal deed exception, and (5) exceptions for utility rights-of-way and a reservation[9] of the oil and gas rights. (*Id.*) Because the coal deed exception is included two times, immediately following each description of the two tracts, it follows that the drafter would have done the same for the oil and gas reservation if

---

[9] Although reservations and exceptions are distinct legal concepts, they are often used interchangeably. *See Rubel v. Johnson*, 2017-Ohio-9221, ¶ 20, 101 N.E.3d 1092, 1099. It is undisputed that by "excepting all of the oil and gas and the rights of leasing the same" that Ms. Freudiger created a reservation.

she intended that it also apply to both tracts. But the oil and gas reservation appears just once: below the legal description of the 80 Acre Tract. Accordingly, the Second Severance Deed unambiguously reserves to Ms. Freudiger the oil and gas rights underlying the 80 Acre Tract only.

Long Point argues that the deed language points the other way. Unlike the oil and gas reservation, the first coal deed exception includes the following introductory phrase specifying that it applies to the above-listed 165 Acre Tract: "Excepting from all of the above tract of land. . .." (*Id.*) Long Point argues that because the drafter specified that the first coal deed exception applied to the tract listed directly above it but chose not to do so for the oil and gas reservation, it is clear that the oil and gas reservation applies to both tracts. However, this argument unravels when the same logic is applied to the second coal deed exception. Like the oil and gas reservation, the second coal deed exception does not include any language that limits its application to a single tract. But application of the second coal deed exception to both tracts would result in duplicative coal deed exceptions to the 165 Acre Tract—the Court will not read such redundancy into the Second Severance Deed.

To avoid summary judgment against it on the claims and counterclaims involving the 165 Acre Tract, Long Point also provides evidence that the Belmont Electric right-of-way applies to both the 80 Acre Tract and the 165 Acre Tract. (Belmont Easement, ECF No. 107-1, Ex. 7.) Because the oil and gas reservation appears in the same sentence as the utility rights-of-way, Long Point argues that

13

the right-of-way and reservation should be treated the same. However, this argument requires examination of extrinsic evidence, and the Court does not look to extrinsic evidence unless the deed is ambiguous. There is nothing in the language or structure of the Second Severance Deed that indicates that the oil and gas reservation applies beyond the 80 Acre Tract and Long Point cannot use extrinsic evidence to create ambiguity where it does not exist.

Because the Freudiger Reservations did not include rights to the oil and gas underlying the 165 Acre Tract, the Freudiger Heirs had no such rights to convey to Long Point. Therefore, Long Point has no ownership interest in the oil and gas underlying the 165 Acre Tract and its claims for trespass, conversion, waste, accounting, unjust enrichment, and equitable disgorgement fail as a matter of law. Accordingly, summary judgment is **GRANTED** in favor of the defendants on the following claims:

- Long Point's Counts I and II, and Counts V through X to the extent they are based on the 165 Acre Tract;

- Perkins Defendants' Count I and Count VI to the extent it involves the 165 Acre Tract; and

- Lessee Defendants' Counts I and II.

### 2. Defendants' counterclaims brought pursuant to the Marketable Title Act fail as a matter of law.

Independent of their claims that the Freudiger Reservations did not include the oil and gas underlying the 165 Acre Tract, Perkins Defendants claim that the

MTA extinguished any severed oil and gas interest underlying the 165 Acre Tract
and Lessee Defendants claim the same as to the 1.15 Acre subdivision.

The MTA extinguishes severed mineral interests after 40 years unless a
saving event has occurred to preserve those rights. *Erickson v. Morrison*, 2021-Ohio-
746, ¶¶ 16–17, 165 Ohio St. 3d 76, (citing Ohio Rev. Code § 5301, *et seq*); *see West v.
Bode*, 2020-Ohio-5473, ¶ 42, 162 Ohio St. 3d 293, 305. Because the Freudiger
Reservations did not include the oil and gas rights underlying the 165 Acre Tract,
no severed mineral interest existed to be extinguished by the MTA and these
counterclaims fail as a matter of law.

Accordingly, summary judgment is **GRANTED** in favor of Long Point on the
Perkins Defendants' Count II and Lessee Defendants' Counts III and IV.

### 3. Long Point's claims involving the 80 Acre and 118 Acre Tracts are barred by the *Rooker-Feldman* doctrine.

Lessee Defendants argue that, because of the Belmont County Litigation, the
Court lacks jurisdiction to hear Long Point's claims involving the ownership of the
oil and gas rights underlying the 80 Acre and 118 Acre Tracts pursuant to the
*Rooker-Feldman* doctrine.[10] (ECF No. 104, PAGEID # 3281.) Even if Lessee

---

[10] All of the defendants raised this argument in their Joint Motion to Dismiss
Long Point's Complaint. (Joint Mot. to Dismiss, ECF No. 56, PAGEID # 1100–05.)
In its November 2, 2021 Opinion and Order, the Court determined that the Belmont
County Litigation was the source of Long Point's injuries relating to the 80 Acre and
118 Acre Tracts, but declined to dismiss those claims under *Rooker-Feldman*
because the allegations and information before the Court at that time were
insufficient for determining whether Long Point was in privity with the state court
losers. (ECF No. 56, p. 9.) At the summary judgment stage, the Court is not bound
by factual determinations made in ruling on the motion to dismiss. *See United*

Defendants had not raised this issue again, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Durham v. Haslam*, 528 F. App'x 559, 565 (6th Cir. 2013) (quotations and citations omitted).

The *Rooker-Feldman* doctrine limits the jurisdiction of federal courts by prohibiting district courts from adjudicating appeals from or collateral attacks on state-court judgments. "Because the Supreme Court is vested with exclusive jurisdiction over appeals from final state-court judgments, the lower federal courts do not have jurisdiction over cases brought by 'state-court losers' challenging state-court judgments rendered before the district court proceedings commenced. . .." *Raymond v. Moyer*, 501 F.3d 548, 550–51 (6th Cir. 2007) (citations and quotations omitted). The *Rooker-Feldman* doctrine bars a plaintiff's claim when there is privity between the federal plaintiff and the state court loser, *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), but "only when a plaintiff complains of injury from the state court judgment itself." *Raymond*, at 551.

Thus, for Long Point's claims to be barred, (a) Long Point must be in privity with a "loser" to the Belmont County Litigation and (b) the source of Long Point's injuries must be the Agreed Judgment.

---

*States ex rel. Holbrook v. Brink's Co.*, 336 F. Supp. 3d 860, 867–68 (S.D. Ohio 2018) (Marbley, J.).

> **a.  Long Point is in privity with the Freudiger Heirs,
> who are state court losers**.

A federal plaintiff is in privity with a state court loser when the loser

adequately represents the plaintiff's legal interest in the first proceeding**.**

*McCormick*, at 396 n.8. Privity is essential to the operation of the *Rooker-Feldman*

doctrine:

> It would be inconsistent to disallow the party in the state suit to raise
> a federal claim but to allow his privy to bring the exact same claim. A
> state party may not circumvent the Article III jurisdictional provisions
> simply by substituting a privy's name for his own in the federal claim.
> This is especially true because the source of the injury to the state
> court loser and his privy would be one and the same: the state court
> judgment.

*McCormick*, at 396.

Long Point does not dispute that it is in privity with the Freudiger Heirs.

(ECF No. 107, PAGEID # 4051–52; ECF No. 33, PAGIED # 788–89.) So, the issue is

whether the Freudiger Heirs are "state court losers."

Long Point argues that the Freudiger Heirs are not state court losers because

they were not named as parties to the Belmont County Litigation and did not have

notice of that action. Not so. There is evidence that at least three of the Freudiger

Heirs were aware of the Perkins Defendants' DMA action before they conveyed a

portion of their reservations to the Remora Parties; in their declarations, the

surviving Freudiger Heirs state that L.D. Jenkins told them about the DMA action

and said that, if they conveyed a portion of their oil and gas rights to him, he would

preserve their rights from abandonment.[11] (Larry Hershey Decl., ECF No. 103-43; Ruth Kissinger Decl., ECF No. 103-44; Gene Zigler Decl., ECF No. 103-45.) Thus, the Freudiger Heirs were aware, even before the state court suit was filed, that the Freudiger Reservations could be abandoned if they did not preserve their rights.

Even if the Freudiger Heirs were not personally aware of the Belmont County Litigation, they received record notice of the state court proceedings. After the state court specifically adjudged that the Freudiger Reservations were abandoned through operation of the DMA, the Agreed Judgment was recorded on August 10, 2012, and references to that judgment were noted in the margins of the Severance Deeds (*i.e.* the instruments that created the Freudiger Reservations). Once the Agreed Judgment was recorded, the Freudiger Heirs had constructive notice of the state court proceedings and could have sought to intervene[12] and challenge the

---

[11] Rather than filing their own claims to preserve, the Freudiger Heirs arguably used the Remora Parties as their agents to preserve their oil and gas rights. The Remora Parties' participation in the Belmont County Litigation was a continuation of their efforts to preserve the Freudiger Reservations from abandonment on behalf of the Freudiger Heirs and, as such, notice to the Remora Parties would have been imputed on the Freudiger Heirs under well-settled agency principles. *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 541 (6th Cir. 2000) (Under Ohio law, "a principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of his employment and is related to the matters within his authority.") (citations omitted).

[12] The Ohio Civil Rules allow for intervention as of right for parties with interests related to the subject matter of the suit even after a final judgment has been entered "if they have no other viable alternative remedy and intervention. . . is the only way to protect their interest." *Greenman v. Greenman*, No. 04CA69, 2005 WL 2300289, * 3 (Ohio App. Sept. 12, 2005) (citing Ohio Civ. R. 24(A), *State ex rel. First New Shiloh Baptist Church v. Meagher,* 82 Ohio St.3d 501, 504 (1998), and *Fitzpatrick v. Fitzpatrick*, 126 Ohio App.3d 476, 482 (1998)).

Agreed Judgment in state court. *See* Ohio Rev. Code §§ 1301.401(B) and 317.08(A)(2)–(3) (recordation of notices of abandonment under the DMA and judgments to quiet title actions "shall be constructive notice to the whole world of the existence and contents of either document as a public record and of any transaction referred to in that public record.")

Instructive here is the *Bruce* case from the Tenth Circuit. *Bruce v. City & Cnty. of Denver*, 57 F.4th 738 (10th Cir. 2023). In *Bruce*, the court found that a real-estate lienholder was a loser in state court receivership proceedings between the City of Denver and another lienholder for the same property even though he was not a party to those proceedings. In his federal suit, the non-party lienholder sought to undo the state court's final determination of the priority of his lien. However, because the lienholder could have intervened in and appealed the final judgment in state court, *Rooker-Feldman* doctrine barred him from bringing suit in federal court. As that court said:

> [U]nder the *Rooker-Feldman* doctrine, the question is whether a federal claimant seeks to appeal a state court judgment that the claimant could have appealed in state court, not whether the federal claimant was listed as a party on a state court docket. . .. The axiom that the doctrine generally applies to the claims of those who were parties in the prior state proceeding does not reflect a requirement; it reflects the reality that the doctrine usually affects such litigants because they are typically the ones bound by the state court judgment and would attempt to undo it. But this is not always true.

*Id.* at 747–48.

19

Similarly, a non-party to in rem proceeding is a "loser" for *Rooker-Feldman* purposes if their property interest is lost in state court. *Dorce v. City of New York*, 2 F.4th 82, 102–03 (2d Cir. 2021). As the Second Circuit explained:

> Someone who loses an ownership interest in property through a state in rem foreclosure proceeding against the property has lost in state court. The mere fact that Plaintiffs were not named parties to the state action against the property does not abrogate the operation of *Rooker-Feldman*. Were we to conclude otherwise, state courts would be unable to exercise in rem jurisdiction without the risk of federal courts undoing their work, because parties with an interest in property who lost in state court could always proceed to federal court for a do-over. Under that approach, state court decisions based on in rem jurisdiction would have inferior force to state court decisions based on other types of jurisdiction, which could be reviewed only by the Supreme Court. We are unpersuaded that the *Rooker-Feldman* doctrine as clarified in *Exxon Mobil* dictates that result, which is antithetical to the original purpose of the doctrine.

*Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)). Property owners in *Dorce* brought federal claims challenging a state court foreclosure action through which their ownership interests were lost. The property owners argued that they did not receive notice of the proceedings and, as a result, were unable to challenge forfeiture in state court for failure to follow regulatory requirements. *Id.* at 92. Nevertheless, because the property owners lost their property interest through the state court proceedings, they were "state court losers" for purposes of *Rooker-Feldman*. *Id.* at 105.

Here, the Belmont County Litigation was an "in rem" proceeding brought to quiet title[13] to the 80 Acre and 118 Acre Tracts. "'In rem proceedings encompass any action brought against a person in which the essential purpose is to determine title to or affect interests in specific property located within the territory over which the court has jurisdiction.'" *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 38 F.4th 501, 508 (6th Cir. 2022) (quoting 1 Am. Jur. 2d *Actions* § 29 (May 2022 Update)). The Agreed Judgment ruled that the Freudiger Reservations were abandoned and that the Perkins Defendants were the fee simple owners of both the surface rights and underlying the oil and gas rights of the 80 Acre and 118 Acre Tracts. As a result of that case, the Freudiger Heir's lost their interest in the oil and gas underlying the 118 Acre and 80 Acre Tracts—they are state court losers.

---

[13] Long Point characterizes the Belmont County Litigation as a declaratory judgment action, but this characterization ignores the relief the Perkins Defendants sought in that action. Ohio courts look to the "substance of the complaint" rather than the "label or caption" to determine the type of action that a plaintiff has brought. *See Williams v. Stillion*, No. 14 MO 0011, 2017 WL 1843716 (Ohio App. Feb. 27, 2017) In *Williams*, the defendant sought to invalidate a trial court decision holding that his oil and gas rights were abandoned by operation of the DMA and vested in the surface-owner plaintiffs. *Id.* at *1. The defendant argued that, because the plaintiffs had failed to add an oil and gas company that had a leasehold interest affected by the judgment, the trial court lacked jurisdiction under Ohio's declaratory judgment statute. *Id.* at *2. The court rejected defendant's argument even though the surface-owner plaintiffs had framed their complaint as a declaratory judgment action, because the substance of the surface owners' complaint, which sought to settle ownership to their property, "sounded in quiet title." *Id.*

**b.  The Agreed Judgment is the source of injury for Long Point's 80 Acre and 118 Acre claims.**

The Agreed Judgment in the Belmont County Litigation is the source of injury for Long Point's claims involving the 80 Acre and 118 Acre Tracts. "The paradigm situation in which *Rooker-Feldman* precludes a federal district court from proceeding" is one in which the plaintiff asks the "federal court to undo the [state] judgment." *Exxon Mobil*, 544 U.S. at 293 (citations and quotations omitted). To find for Long Point on any of its claims involving 80 Acre and 118 Acre Tracts, the Court would have to undo the Agreed Judgment and find that Perkins Defendants did not follow the proper procedures under the DMA as addressed in the Belmont County Litigation. Its claims are premised on Long Point's theory that it is the true owner of the Freudiger Reservations because those rights were not abandoned due to alleged deficiencies in the Perkins Defendants' DMA action and in the Belmont County Litigation.

Accordingly, Long Point's Counts III and IV and Counts V through X to the extent they are based on the 80 Arce and 118 Acre Tracts are **DISMISSED** for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

**4.  Defendants may not rely on the Agreed Judgment in establishing their counterclaims brought pursuant to the DMA.**

All of the defendants seek declaratory judgment and to quiet title to the Freudiger Reservations consistent with the Agreed Judgment. Unlike Long Point's claims, these claims are not barred by the *Rooker-Feldman* doctrine—defendants are state court winners or their privies and, rather than asking the Court to reverse

the Agreed Judgment, they ask the Court to uphold it. Nevertheless, the Perkins Defendants and Lessee Defendants are not entitled to duplicative judgments declaring that the Freudiger Reservations were abandoned under the DMA or quieting title to same. *See O'Nesti v. DeBartolo Realty Corp.,* 2007-Ohio-1102, ¶ 16, 113 Ohio St. 3d 59, 63, 862 N.E.2d 803, 808 (explaining that offensive claim preclusion is strongly disfavored and that the preclusive effect of a prior judgment "is not meant to be used as a sword to accumulate multiple judgments on the same cause of action.") (quotations and citations omitted).

Accordingly, summary judgment is **GRANTED** to Long Point on the Perkins Defendants' Count V and on Count VI to the extent it involves the 80 Acre and 118 Acre Tracts and on Lessee Defendants' Counts V and VI.

## IV.  DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON INDEMNIFICATION

Finally, defendants have filed cross-motions for summary judgment on the Perkins Defendants' indemnification crossclaim. (ECF Nos. 103, 105.) In their motion, the Perkins Defendants conceded that, if they are not found liable to Long Point, they are not entitled to indemnification. (Mot., ECF No. 103, PAGEID # 2583, 85; Resp., ECF No. 114, PAGEID # 4154.) Because Perkins Defendant are not liable to Long Point on any claims, summary judgment is **GRANTED** in favor of Lessee Defendants on the indemnification crossclaim (Perkins Defendants' Count VII).

## V.    CONCLUSION

For the reasons set forth above, Lessee Defendants' Motion to Strike (ECF No. 129) is **GRANTED**. As to the Motions for Summary Judgment (ECF Nos. 103, 104, 105, 107):

- Summary judgment is **GRANTED** in favor of the defendants on Long Point's Counts I and II and Counts V through X to the extent they are based on the 165 Acre Tract; on Perkins Defendants' Count I and Count VI to the extent it is based on the 165 Acre Tract; and on Lessee Defendants' Counts I and II.

- Summary judgment is **GRANTED** in favor of Long Point on Perkins Defendants' Counts II and V and Count VI to the extent it involves the 80 Acre and 118 Acre Tracts and on Lessee Defendants' Counts III through VI.

- Long Point's claims involving the 80 Acre and 118 Acre Tracts, Counts III through X, are **DISMISSED** for lack of subject matter jurisdiction.

- Summary judgment is **GRANTED** in favor of Lessee Defendants on Perkins Defendants' Count VII.

Remaining for determination is Lessee Defendants' slander of title claim (Count VII). The Court will set a trial date for this claim in a forthcoming order.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**