# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**LONG POINT ENERGY, LLC,**

          **Plaintiff,**          **:**

                                **Case No. 2:20-cv-4644**

     **v.**                            **Judge Sarah D. Morrison**

                                **Magistrate Judge Kimberly A.**
                                **Jolson**

**GULFPORT ENERGY**
**CORPORATION,** *et al.,*        **:**

          **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court after the Sixth Circuit Court of Appeals reversed this Court's grant of summary judgment in favor of the Perkins Defendants[1] and the Lessee Defendants[2] on the claims and counterclaims regarding the oil and gas rights underlying a 165-acre tract of land in Belmont County, Ohio. That 165-acre tract of land is split between two parcels: a 163.5-acre tract and a 1.15-acre tract. Long Point has abandoned its claims related to the 1.15-acre tract,[3]

---

[1] Perkins Defendants are Michael A. Perkins, Jill E. Perkins, Mitchell G. Perkins, Dedra D. Perkins, Phillip J. Perkins, Jackie M. Perkins, Nancy L. Garrison, and Robert Garrison.

[2] Lessee Defendants are Rice Drilling D LLC, Gulfport Energy Corporation, and Gulfport Appalachia LLC.

[3] As a result of this abandonment (ECF No. 175, PAGEID# 5050, n. 3), summary judgment is **GRANTED** to the Perkins Defendants on their Counterclaim Counts I, II, and VI to the extent those claims are based on the 1.15-acre tract, to the Lessee Defendants on their Counterclaim Counts III–IV, and to all Defendants on Long Point's Counts I–II and V–X to the extent those claims are based on the 1.15-acre tract.

so the 163.5-acre tract (hereinafter "the Subdivision") is the only parcel remaining at issue.

The parties have agreed to bifurcate the issues of ownership and damages. They have now cross-moved for summary judgment on the ownership issues. Also before the Court is a Joint Motion to Dismiss and Long Point's Motion to Strike. The motions are fully briefed and ripe for consideration.

## I.  STATEMENT OF FACTS

The full factual background was set out in this Court's March 2023 Order. (ECF No. 133.) The facts relevant to ownership of the oil and gas rights underlying the Subdivision are set forth below.

### A.  The Subdivision's surface rights were sold in 1948 with a reservation of the oil and gas rights.

In 1948, Bertha Freudiger conveyed the Subdivision's surface rights to Glenn and Ruth Perkins but reserved "all of the oil and gas and the right of leasing the same, together with customary surface privileges." (1948 Deed, ECF No. 103-8); *Long Point Energy, LLC*, 2025 WL 76249, at *3. That reservation is referred to as the "Freudiger Reservation." The Subdivision's surface rights were then transferred several times within the Perkins family; each transfer reserved the oil and gas rights underlying the Subdivision using the same language as the 1948 Deed.[4]

The Freudiger Reservation also went through several transfers. When Ms. Freudiger died testate in 1962, she left the residue of her estate (including the

---

[4] Each transfer was recorded and is included in the record. (*See, e.g.*, 1948 Deed; 1968 Deed, ECF No. 103-69; 1971 Deed, ECF No. 103-68; 1991 Deed, ECF No. 103-2; 1999 Deed, ECF No. 103-3; 2003 Deed, ECF No. 103-4.)

Freudiger Reservation) to her daughter Martha Estell Zigler.[5] (ECF No. 99-11.) After the deaths of Martha Zigler and one of her children, Ruth Kissinger and Gene Zigler each inherited a one-third interest in the Freudiger Reservation, and Delores Drabenstott, Paul Hershey, and Larry Hershey each inherited a one-ninth interest (collectively, the "Freudiger Heirs"). (ECF Nos. 99-14 and 99-15.) Long Point purchased the Freudiger Reservation from the Freudiger Heirs in 2019, as reflected in several deeds that were backdated to 2013. (Long Point Deeds, ECF No. 107-1, Exhibits A-1 through A-5.)

> ### B. In 2013, the Perkins Defendants purported to lease the Subdivision's oil and gas rights to Rice Drilling and Gulfport.

On May 24, 2013, the Perkins Defendants leased the Subdivision's oil and gas rights to Rice Drilling. (ECF No. 1-3, Ex. W; ECF No. 103-39.) Around that time, Rice Drilling acknowledged in an internal title document that the Freudiger Reservation "needs [Ohio Dormant Mineral Act]." (ECF No. 176-2.) And after entering the lease, an attorney for Rice Drilling noted that the "[l]essor will need to seek outside legal counsel to pursue reclaiming the oil and gas from heirs and assigns of Bertha E. Freudiger." (ECF No. 176-4.) Rice Drilling advised the Perkins Defendants of its conclusion and recommended they seek an attorney to merge the reserved oil and gas rights with their surface rights. (ECF No. 117-2.)

In 2014, prior to obtaining any interest in the lease, Gulfport received a title opinion that also concluded that there was a question regarding the ownership of

---

[5] Probate records for Ms. Zigler were filed in Medina County but were not filed in Belmont County until 2020. (Yoss Depo, ECF No. 99, PAGEID # 1404.)

the Freudiger reservation, advising: "Out of an abundance of caution you should confirm through inquiry that the unknown heirs, devisees and/or assigns of Bertha E. Freudiger are not claiming a mineral interest in the subject parcel." (ECF No. 103-29, PAGEID# 2762.)

Rice Drilling subsequently revised its internal title opinion to find that the Freudiger Reservation was abandoned. It says that it made this revision because, at the time, the effect of Ohio's Dormant Mineral Act ("DMA") was "unsettled." (ECF No. 103-23.) In 2014, the Ohio Seventh District Court of Appeals issued a decision concluding that the 1989 DMA (1) automatically vested interest of unused mineral rights to surface owners after 20 years, and (2) applied to any interest that automatically vested unused mineral rights to a surface owner after March 22, 1992. *Walker v. Shondrick-Nau*, No. 13 NO 402, 2014 WL 1407942 (Ohio App. Ct.). However, the Ohio Supreme Court later overturned the Seventh District's decision, holding that the 2006 DMA (not the 1989 version) applied to any abandonment claims brought after June 30, 2006, and that the 1989 DMA was not self-executing (meaning it did not automatically transfer abandoned mineral rights to the surface owner). *Walker v. Shondrick-Nau*, 74 N.E.3d 427 (Ohio 2016).

Nonetheless, Rice Drilling assigned 51.84% of its purported interest in the leases to the Subdivision to Gulfport. (ECF Nos. 103-25, 103-26, 103-27, 103-28.) Fourteen oil wells were constructed to produce oil and gas in 2014 and 2015, and they began producing in 2016. (ECF No. 103-74.)

4

### C.   Long Point files this litigation.

Less than a year after Long Point recorded its deed for the Freudiger Reservation, it filed this suit. Its claims regarding the Subdivision remain:

Count I–II:   Declaratory Judgment and Quiet Title against all Defendants

Count V:      Trespass against Lessee Defendants

Count VI:     Conversion against Lessee Defendants

Count VII–VIII:   Waste against Lessee Defendants

Count IX:     Accounting of Rents and Profits against Lessee Defendants[6]

Count X:      Unjust Enrichment against Lessee Defendants[7] and Equitable Disgorgement against all Defendants

The Perkins Defendants' counterclaims and a crossclaim regarding the Subdivision that remain are:

Count I:      Declaratory Judgment against Long Point

Count II:     Declaratory Judgment under Ohio's Marketable Title Act ("MTA") against Long Point

Count VI:     Quiet Title against Long Point

Count VII:    Indemnification against Lessee Defendants

Lessee Defendants' counterclaims against Long Point that remain are:

Count I–II:       Declaratory Judgment and Quiet Title (163.5-acre tract) Against Long Point

---

[6] Long Point abandoned its Accounting Claim against the Perkins Defendants in the instant summary judgment briefing. (ECF No. 175, PAGEID# 5099, n. 8.)

[7] Long Point also abandoned its unjust enrichment claim against the Perkins Defendants. (ECF No. 175, PAGEID# 5102, n. 9.)

## II.     JOINT MOTION TO DISMISS

The Perkins Defendants and Gulfport Energy Corporation and Gulfport Appalachia, LLC (together, "Gulfport") jointly move to dismiss "Crossclaims Count I–V asserted by the Perkins Defendants against Gulfport[.]" (ECF No. 190, PAGEID# 5657.) But the Perkins Defendants did not assert Counts I–V against Gulfport.

The Perkins Defendants' and Gulfport's' Joint Motion to Dismiss is thus **DENIED as moot.**

## III.    MOTION TO STRIKE

"Motions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Loc. 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). Even so, Long Point seeks to strike a map, two footnotes, a "legend," and two exhibits filed by the Lessee Defendants in their reply brief (ECF No. 183), as well as the exhibits Lessee Defendants filed contemporaneously with their Notice of Refiling Exhibits (ECF No. 188). (*See* Motion to Strike, ECF No. 189, PAGEID# 5649.) Long Point argues that this evidence was improperly raised for the first time in a reply memorandum and it is otherwise inadmissible.

Arguments raised for the first time on reply are generally considered waived because the opposing party is not afforded a response. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). But that was not the case here. Long Point filed a Reply in Support of its own Motion for Summary Judgment *after* Lessee Defendants filed their combined Response in Opposition to Long Point's

Motion for Summary Judgment and Reply in Support of their own Motion. (ECF No. 187.) In that Reply, Long Point had an opportunity to substantively respond to the evidence Lessee Defendants' included in their Reply. Thus, the fairness concerns typically associated with arguments raised for the first time on reply do not exist here. To the extent Lessee Defendants "refiled" exhibits after Long Point's Reply (ECF No. 188), the Court will not consider those materials for purposes of this Opinion and Order.

Long Point's argument that the evidence is inadmissible is equally unavailing. If any of the evidence Long Point seeks to exclude is irrelevant, inadmissible, or unverified, the Court will just ignore it. *Nat'l Pension Fund v. Ivitts Plumbing Contractors, Inc.*, No. 5:12-cv-112, 2014 WL 3905589, *3 (W.D. Ky. Aug. 11, 2014) ("[M]otions to strike are generally disfavored. Rather than striking material, a court may simply ignore inadmissible evidence.").

Long Point's motion to strike is **DENIED.**

## IV.     CROSS-MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving

party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted).

When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). On cross-motions for summary judgment, like those *sub judice*, courts perform a "hat switch"—in reviewing the *defendant's* motion, the court accepts *plaintiff's* view of the facts as true and draws all reasonable inferences in favor of the *plaintiff*; but in review of the *plaintiff's* motion, the court accepts the *defendant's* view of the facts and draws all reasonable inferences in favor of the *defendant*. *Harris v. City of Saginaw, Mich.*, 62 F.4th 1028, 1032–33 (6th Cir. 2023). "When parties file cross-motions for summary judgment, the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001). A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597–98 (1986) (concluding that summary judgment is

8

appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### A. Long Point's Ownership in the Oil and Gas Rights Underlying the Subdivision

The law of the case here is that the 1948 Deed transferring the Subdivision's surface rights excepted the Freudiger Reservation. *Long Point Energy, LLC*, 2025 WL 76249 at \*3. And there is no dispute that Long Point purchased the Freudiger Reservation. The Defendants raise three arguments in an effort to divest Long Point of its interest in the Freudiger Reservation: 1)  Long Point's interest is barred by the doctrines of champerty and maintenance, 2) Long Point's interest was extinguished by the MTA, and 3) the Lessee Defendants' have superior title to Long Point because they are bona-fide-purchasers for value. The Court addresses each argument in turn.

#### 1. The doctrines of champerty and maintenance do not apply.

The doctrines of champerty and maintenance were developed at common law. *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 220 (Ohio 2003). "'Maintenance' is assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case." *Id.* at 219. "'Champerty' is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues." *Id.* When the doctrines of champerty and maintenance apply, the assignment that would otherwise permit an assignee to stand in the

shoes of the assignor is void. *Hiles v. NovaStar Mortg., Inc.*, 2012 WL 4813775, *4 (S.D. Ohio Oct. 10, 2012) (Black, J.).[8]

Long Point's actions do not fit the definition of either champerty or maintenance. It is not assisting a litigant in pursuing a claim—it is the litigant. Nor is Long Point furthering another's interest in exchange for a profit of the litigated matter. It is the only party that stands to profit or otherwise benefit from this litigation (or to suffer if the litigation goes awry). Long Point purchased the Subdivision, an assignment of claims, *and* the accompanying risk.

Nevertheless, Defendants argue that these doctrines apply here because Long Point searched the public record for arguably abandoned oil and gas interests, found the Freudiger Reservation, and then paid the Freudiger Heirs a nominal amount for the interest (which included an assignment of claims) with the sole intent of filing this action. In support of this argument, Defendants rely on a series of cases from the Ohio Seventh District Court of Appeals known as the *Cardinal* cases. (ECF No. 167, PAGEID# 4969; ECF No. 168, PAGEID# 5025.)

In the *Cardinal* cases, Cardinal Minerals looked for oil and gas interests to purchase by searching public records for Affidavits of Abandonment under the DMA, specifically looking for abandonments that were completed by publication and

---

[8] Long Point argues that champerty and maintenance are affirmative defenses that Defendants waived by not asserting in their respective answers. But this Court has previously treated these doctrines as a challenge to standing. *See Hiles* at *4. Standing is not an affirmative defense that must be preserved to avoid waiver. *See Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994).

not by certified mail. *Cardinal Minerals, LLC v. Miller*, 246 N.E.3d 71, 75 (Ohio App. Ct. 2024). Cardinal Minerals then determined whether the subject property was producing oil or gas and, if so, it attempted to find the heirs to the interest; if it found the heirs, it purchased the interest (along with the right to sue), and it filed suit claiming that the abandonment process was invalid. *Id.* In the cases before it, the appellate court analyzed the DMA and the deeds for the subject property and found that the recorded deeds contained a marginal notation indicating that the severed mineral interest had been abandoned and was no longer effective. *Id.* at 79. The heirs to the interest had not sought to challenge the abandonment process so, under the DMA, the mineral interests had vested in the surface owner of the subject property. *Id.* As a result, the appellate court found that the heirs did not own an interest in the minerals to transfer to Cardinal Minerals; rather, Cardinal Minerals purchased only the right to file a lawsuit over already abandoned mineral rights. *Id.; see also Cardinal Minerals, LLC v. Miller*, 249 N.E.3d 868, 877 (Ohio App. Ct. 2024) ("Consequently, when the Pfalzgraf Heirs conveyed their mineral interests to Cardinal, they had nothing to quitclaim because they did not own anything of record."); *Cardinal Minerals, LLC v. Blatt*, Nos. 24MO0008, 24MO0009, 24MO0011, 24MO0012, 2025 WL 1010270, *6 (Ohio App. Ct.) ("We found Cardinal sought out the property interests for the purpose of pursuing litigation despite the fact that abandonment was evident from the public record."). The purchasing of a lawsuit violated champerty and maintenance. 246 N.E.3d at 81.

11

Here, unlike in *Cardinal*, the Freudiger Reservation was never the subject of an abandonment under the DMA or quiet title action. Indeed, the Ohio Seventh District Court of Appeals has recognized that this distinguishing fact provides an assignee plaintiff with standing and does not violate champerty or maintenance. *See 1803 Res., LLC v. Lineback*, Nos. 24MO0019, 24MO0023, 2025 WL 2618986, *18–19 (Ohio App. Ct.).[9]

The doctrines of champerty and maintenance do not deprive Long Point of standing.

### 2. Long Point's interest was not extinguished by the Marketable Title Act.

Ohio law provides a marketable record title to a person who has an unbroken chain of title to any interest in land for at least 40 years. Ohio Rev. Code § 5301.48. Marketable record title extinguishes interests and claims existing before the effective date of the root of title. Ohio Rev. Code § 5301.47(A).

To determine whether the MTA provides a marketable title, a court begins by locating the root of title. The root of title is the most recent conveyance or other title transaction in the chain of title that purports to create an interest in a person and was recorded at least forty years before the date when marketability is being

---

[9] In *1803 Resources*, the assignee plaintiff purchased oil and gas interests that were never the subject of a DMA abandonment or quiet title action. *Id*. at *17. Rather, the surface owners of the property claimed the oil and gas rights were extinguished under the MTA. But when mineral rights are extinguished under the MTA, nothing is filed of record because the extinguishment occurs as a matter of law after the passage of time. Nothing in the source instrument acquired by assignee plaintiff indicated that it was not acquiring a legally recognized interest in the mineral rights.

determined. Ohio Rev. Code § 5301.47(E). The effective date of the root of title is the date on which it is recorded. *Id.*

Once the root of title is identified, a three-step inquiry must be conducted to determine whether any interests that predated the root of title were preserved: 1) is there an interest included in the root of title that describes a previously recorded interest within the chain of title? 2) if so, is the reference to that interest a "general reference"? and 3) if the answer to the first two questions is yes, does the general reference contain a specific identification of a recorded title transaction? *Erickson v. Morrison*, 176 N.E.3d 1, 5 (Ohio 2021) (citing *Blackstone v. Moore*, 122 N.E.3d 132 (Ohio 2018)). The term "general reference" is undefined under the MTA, so courts apply the ordinary meaning of "general," which "is defined as 'marked by broad overall character without being limited, modified, or checked by narrow precise considerations[.]'" *Id.* If there is a specific reference to an interest contained in the root of title, it is preserved. But if it is general reference, then the court looks to whether it contains a specific identification of a previously recorded title transaction.

Here, the root of title is the 1971 Deed transferring the surface rights from Glenn Perkins to Arthur Perkins and to a trust for the benefit of Linda Perkins. (1971 Deed, ECF No. 103-68.)

Turning to the MTA's three-step inquiry, the Perkins Defendants do not dispute that the 1971 Deed identifies an oil and gas reservation, so the answer at step one is yes.

13

As for the second step, the 1971 Deed contains a specific reference. As the Ohio Supreme Court has concluded, the MTA does not require that the reservation specify the interest's owner or a reference to the volume and page number where the interest was created to be a specific refence. *Erickson*, 176 N.E.3d at 81–82. Rather, if the title contains an identifiable reservation of mineral rights that can be determined through a reasonable title search, the reservation is a specific reservation. *Id*. at 76. Here, the 1971 Deed contains the same specific, identifiable reservation of oil and gas rights throughout the chain of title dating back to the deed that created the reservation. (*Compare* 1948 Deed, ECF No. 103-8, *with* 1971 Deed, ECF No. 103-68.) The 1971 Deed's reference to the Fruediger Reservation is sufficient to preserve the interest from being extinguished under the MTA.

### 3. Lessee Defendants are not entitled to a Bona-Fide-Purchaser for Value defense.

The Lessee Defendants contend that, irrespective of Long Point's interest in the Freudiger Reservation, they own their leasehold free and clear as bona fide purchasers for value ("BFPs"). A BFP "is one who acquires legal title to real estate for valuable consideration, in good faith, and without knowledge or notice of another's equitable interest in that property." *Ford v. Baska*, 93 N.E.3d 195, 198 (Ohio App. Ct. 2017). To qualify, a BFP must 1) acquire legal title, and 2) have no actual or constructive knowledge of another's interest. *Id*. Lessee Defendants' claim that they are BFPs fails on the first element, so the Court need not address the second.

The fact that the Lessee Defendants never acquired legal title is straightforward—the Perkins Defendants never had it to transfer. Trying to avoid this result, Lessee Defendants' only argument is that, in 2013 when Rice Drilling leased the oil and gas rights from the Perkins Defendants, the DMA's effect on the Freudiger Reservation was unsettled and "rapidly evolving." At that time, the Ohio Supreme Court had not ruled on when the 1989 DMA or the 2006 DMA applied to a claim of abandonment, or whether the 1989 DMA was self-executing. (ECF No. 168, PAGEID# 5018.)[10] So, in the absence of an Ohio Supreme Court decision, Rice Drilling claims that it reasonably thought that the Freudiger Reservation was abandoned. But that the law was unsettled is insufficient to vest legal title to the Freudiger Reservation in the Perkins Defendants. As such, there was no interest for the Lessee Defendants to lease from the Perkins Defendants. *See, e.g.*, *KMAG Holdings Group, Inc. v. J. Phillip Chubb Ins. Agency*, No. 1:15-cv-66, 2016 WL 815604, \*3 (N.D. Ohio Mar. 2, 2016) ("[I]t is axiomatic that an owner cannot transfer to a purchaser that which it does not own.").

Lessee Defendants have failed to establish that they are entitled to a BFP defense.

---

[10] When the Ohio Supreme Court acted in 2016, it ruled against the Lessee Defendants' position, holding that the 2006 DMA applies to all claims for abandonment asserted after June 30, 2006, and that the 1989 DMA does "not automatically transfer ownership of dormant mineral rights by operation of law." *Corban v. Chesapeake Expl., L.L.C*, 76 N.E.3d 1089, 1097–98 (Ohio 2016).

15

### 4.  Long Point is entitled to summary judgment on its declaratory judgment and quiet title claims.

In sum, Defendants' arguments attempting to divest Long Point of its interest in the Freudiger Reservation fail as a matter of law. The doctrines of champerty and maintenance do not apply. The MTA did not extinguish the Freudiger Reservation. And Lessee Defendants are not bona fide purchasers of the mineral rights of the Subdivision. Summary judgment is **GRANTED** to Long Point on its Counts I and II, in favor of Long Point on the Perkins Defendants' Counts I, II, and VI (declaratory judgment and quiet title), and in favor of Long Point on the Lessee Defendants' Counts I and II (declaratory judgment and quiet title). Summary judgment is **DENIED** to all the Defendants on these claims to the same extent.

### B.  Long Point's Remaining Claims and Defendants' Affirmative Defenses

As an alternative to their efforts to invalidate Long Point's ownership of the Freudiger Reservation, the parties seek summary judgment on various legal or equitable grounds that Defendants argue limit or bar Long Point's claims relating to the Subdivision.[11] Specifically, all Defendants argue that Long Point's claims for

---

[11] Long Point argues in the alternative that the Court should not address these issues as part of the current summary judgment briefing because the parties bifurcated the case, and they have not yet conducted damages discovery. (ECF No. 176, PAGEID# 5139.) Long Point claims that it needs discovery of documents related to production by the subject wells, drilling and completion procedures, and operators' conduct. (*Id.*, PAGEID# 5140.) However, the issues addressed in this Section are not issues of damages; none of the discovery that Long Point says it needs would change the Court's analysis of the issues addressed herein. A ruling now could limit the scope of the damages discovery.

16

damages are barred by laches; Lessee Defendants argue that they should not be held liable for production of oil and gas from the Freudiger Reservation before March 1, 2019; Lessee Defendants argue they are entitled to judgment as a matter of law on Long Point's claims for trespass, conversion, and waste; and Perkins Defendants argue that equitable disgorgement is a remedy, not a claim.[12] The Court addresses these arguments seriatim.

### 1. Laches

The parties move for summary judgment on whether Long Point's claims are barred by the doctrine of laches.

Under Ohio law, "[t]he elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 656 N.E.2d 1277, 1279 (Ohio 1995). "All four elements must exist for laches to apply." *Menges v. Strunk*, 262 N.E.3d 1091, 1101 (Ohio App. Ct. 2025). As for the fourth element, "[t]he party invoking the doctrine must show the delay caused material prejudice." *Id*. Material prejudice may involve a good faith change of position in reliance on the other party's inaction, the acquisition of rights by innocent parties, the loss of essential evidence,

---

[12] The Perkins Defendants also argue that the are entitled to summary judgment on Long Point's accounting claim (Count IX) and unjust enrichment claim (Count X). But Long Point is not pursuing either of these claims against the Perkins Defendants. (ECF No. 175, PAGEID# 5099, n. 8 and PAGEID# 5102, n. 9.) Thus, the Perkins Defendants Motion for Summary Judgment is **GRANTED** on these issues.

or the expenditure of money or incurring of obligations upon belief of possession of a clear or unencumbered right. *Ellis v. Patonai*, No. 06CA0012, 2006 WL 2788562, *3 (Ohio App. Ct.). "What constitutes material prejudice is primarily a question of fact to be resolved through a consideration of the special circumstances of each case." *State ex rel. Doran v. Preble Cty. Bd. of Commrs.*, 995 N.E.2d 239, 246 (Ohio App. Ct. 2013).

The Court begins and ends its analysis with the fourth element because none of the Defendants have satisfied their burden to show that they were prejudiced by any delay in the pursuit of claims related to the Freudiger Reservation.

As for the Perkins Defendants, they argue that they were prejudiced because, had the Freudiger Heirs brought their claim sooner, there would be no claim for damages against them. Or, put another way, the Perkins Defendants argue they were prejudiced by being permitted to unlawfully assert ownership over the Freudiger Reservation for too long. But "[d]elay in asserting a right does not of itself constitute laches[.]" *Thirty-Four Corp. v. Sixty-Seven Corp.*, 474 N.E.2d 295, 298 (Ohio 1984). The Perkins Defendants ignore that Rice Drilling warned them that the title might be defective, yet they never initiated abandonment procedures or otherwise attempted to ameliorate any risk of prejudice. Rather, the Perkins Defendants chose to hope and rely on the Freudiger Heirs' delay, risking one day facing the situation in which they now find themselves.

For their part, the Lessee Defendants argue that they are prejudiced because they expended substantial money and incurred obligations based upon a belief of

18

possession of a clear or unencumbered right. But they have not shown that they reasonably believed the Perkins Defendants had a clear or unencumbered right to lease them the Freudiger Reservation. As discussed above, that there is a reservation of oil and gas rights was clear on the Perkins Defendants' title. Rice Drilling acknowledged the Freudiger Heirs' possible interest in several internal title documents based on the publicly available record of title. Gulfport also recognized that there was a question regarding title before it obtained its interest in the Subdivision. But the Lessee Defendants did nothing to notify the Freudiger Heirs or to otherwise clear the title. Any prejudice experienced by Lessee Defendants was of their own making.[13]

There are no grounds for a reasonable jury to find that any of the Defendants were prejudiced by any alleged delay in either the Freudiger Heirs or Long Point asserting their rights to the Freudiger Reservation. Defendants' Motions for Summary Judgment are **DENIED** and Long Point's Motion for Summary Judgment is **GRANTED** on laches.

### 2.    Liability for Production Before March 1, 2019

Lessee Defendants next argue that, even if the Court finds in Long Point's favor on the ownership of the Freudiger Reservation, they are not liable to Long Point for any production that occurred before March 1, 2019 for three reasons: 1) Long Point cannot recover for oil and gas production occurring before the date its

---

[13] To the extent Lessee Defendants argue they had a good faith belief of possession of a clear or unencumbered right because the law was unsettled, their argument fails for the same reason it fails in support of their BFP defense.

first deed was delivered (March 1, 2019); 2) the Freudiger Heirs did not validly assign their claims that existed before March 1, 2019; and 3) the backdated effective date on the deeds is void because Long Point did not exist as a legal entity as of the effective date. The second issue, whether the Freudiger Heirs validly assigned all their claims to Long Point, is dispositive of all three issues, so the Court starts there.

Under Ohio law, rights or claims incident to the possession of property are distinguished from personal rights or claims that remain with the seller. *Cheatham I.R.A. v. Huntington Nat'l Bank*, 137 N.E.3d 45, 51 (Ohio 2019). Personal rights or claims are known as a "chose in action." *Id.* "Ohio has long permitted the assignment of a chose in action to a third party." *Id.* at 52. Such an assignment is a contract, which must include an unambiguous manifestation by the assignor "to transfer the right to the assignee." *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 821 (6th Cir. 2015) (cleaned up).

Each deed from the Freudiger Heirs to Long Point contained the same assignment of claims:

> [T]ogether with all of Grantor's executive rights appurtenant thereto and the right of ingress and egress to the surface of the Property for all purposes associated with the ownership of said oil & gas minerals, including, but not limited to, Grantor's (i) right to receive future bonuses, rents, and royalties attributable to said oil & gas minerals; **(ii) interest in all claims against third parties attributable to said oil & gas minerals;** and (iii) interest in all third party warranties or guaranties, if transferable, relating to the Property.

20

(*See, e.g.*, ECF No. 1-1, PAGEID# 76. (emphasis added).) This language is unambiguous: Long Point was assigned all claims related to the oil and gas underlying the Subdivision.

Lessee Defendants argue that it is "impossible" to determine whether Long Point has been assigned title claims, tort claims, contract claims, or a combination thereof, apparently ignoring the word "all" as the adjective describing "claims." The Freudiger Heirs assigned to Long Point "*all* claims."

Lessee Defendants next argue that "attributable to said oil & gas minerals" is ambiguous because Long Point's claims for trespass, conversion, and unjust enrichment are more properly viewed as "attributable" to their alleged wrongdoing than to "oil and gas minerals." But this argument ignores the fact that the wrongdoing alleged in those three claims would not exist without the oil and gas minerals. In other words, the claims are "attributable" to Lessee Defendants' development and production of the oil and gas minerals.

Long Point's Motion for Summary Judgment on this point is **GRANTED** and Lessee Defendants' Motion for Summary Judgment is **DENIED**.

### 3.     Trespass and Conversion

Lessee Defendants also argue that they are entitled to partial summary judgment on Long Point's trespass and conversion claims.[14] Specifically, they argue

---

[14] Lessee Defendants initially moved for summary judgment as to Long Point's conversion claim based on the statute of limitations. (ECF No. 168, PAGEID# 5035.) They abandoned this argument in their Reply. (ECF No. 183, PAGEID# 5580, n 3.)

that four of the eight wells at issue do not traverse the Subdivision, so Long Point cannot prove that trespass or conversion occurred. They also argue that to the extent Long Point seeks to recover for a claim of conversion as to wells that do not traverse the Subdivision, the rule of capture applies.

However, the trespass and conversion claims are general claims; they are not specific to individual wells. Lessee Defendants' argument is thus inextricably intertwined with damages (*i.e.*, the quantity of production for the wells alleged to traverse the Subdivision). And because damages discovery has not yet been conducted, it would be premature to parse the wells that may or may not impinge on the Subdivision.

Lessee Defendants' Motion for Summary Judgment on Long Point's Counts V and VI is **DENIED**.

### 4.    Waste

Lessee Defendants move for summary judgment on Long Point's waste claim. They argue that, if Long Point is the sole owner of the Subdivision, it cannot assert a claim for waste.

Under Ohio law, one owner or tenant of land may maintain a waste action against a co-owner. Ohio Rev. Code § 5307.21. But waste claims are only viable between cotenants. *Id.* Long Point concedes that its waste claim requires that Lessee Defendants have a lawful possessory interest in a portion of the oil and gas rights underlying the Property. (Compl. ¶ 125, ECF No. 1, PAGEID# 31.)

22

Because Long Point owns 100% of the oil and gas rights underlying the Subdivision, its waste claim fails as a matter of law. Summary judgment is **GRANTED** in favor of the Lessee Defendants as to Long Point's Counts VII and VIII.

### 5.    Equitable Disgorgement

Perkins Defendants move for summary judgment on Long Point's Count X, which asserts a claim against them for equitable disgorgement. Under Ohio law, "equitable disgorgement" is not a claim or a cause of action, it is a remedy. *Cirino v. Bureau of Workers' Comp.*, 171 N.E.3d 840, 846 (Ohio App. Ct. 2021). Accordingly, Long Point can pursue equitable disgorgement as a remedy for a successful claim. However, to the extent it was pleaded as a stand-alone claim in Count X, summary judgment is **GRANTED** in favor of the Perkins Defendants.

## C.    Perkins Defendants' Crossclaim for Indemnification

Finally, all Defendants move for summary judgment on the Perkins Defendants' crossclaim for indemnification (Count VII).

Lessee Defendants argue that the Court is bound by its prior decision declining to address indemnification because that decision was not appealed. They argue in the alternative that the indemnification provision does not apply to damages arising from Long Point's declaratory judgment and quiet title claims (the only successful claims against the Perkins Defendants). Perkins Defendants disagree on both points.

As to the Lessee Defendants' first argument, the Court did not reach the merits of the indemnification crossclaim in its previous Order because there were no surviving claims against the Perkins Defendants for which they could be indemnified. The Sixth Circuit did not address the indemnification issue on appeal, but it did revive some of Long Point's claims against the Perkins Defendants. Thus, there is nothing to bind the Court because there was not a decision on the merits.

Turning to the merits of the claim now, Article XII of the Defendants' lease includes the following indemnification provision:

> **Indemnity**: Lessee agrees to indemnify, defend, and hold harmless Lessor and Lessor's heirs, successors, agents, assigns, and any other person acting under Lessor's direction and/or control against any and all claims, damages, costs, losses, liabilities, expenses (including but not limited to any reasonable attorneys' fees, expert fees, and court costs) arising out of, incidental to or resulting from the Lessee's Operations and actions, and the Operations and actions of Lessee's servants, agents, employees, guests, licensees, invitees, independent contractors, assigns, or any other person acting under Lessee's direction and control. Lessee's obligations hereunder shall survive the termination of this Lease.

(ECF No. 105-1, PAGEID# 4019.) "Operations" is defined in Article XVIII as:

> **Operations**: "Operations" shall mean any action done by Lessee (or by Lessee's servants, agents, employees, guests, licensees, invitees, independent contractors, assigns, or any other person acting under the Lessee's direction or control) related to or in connection with the activities contemplated by this Lease.

(*Id.*, PAGEID# 4021.)

The indemnification provision applies to damages arising from Lessee Defendants' actions to accomplish activities contemplated in the lease. The Perkins Defendants do not dispute this point. Rather, they argue that "if [Lessee Defendants] had not drilled and produced, then there would be no damage claims

against" them. But the Perkins Defendants have been successful on Long Point's "damages" claims. Long Point's claims against them for unjust enrichment and accounting were abandoned and the Court grants summary judgment to the Perkins Defendants on Long Point's disgorgement "claim" in this Opinion and Order. The only claims for which the Perkins Defendants have had judgment against them are title-related claims. Those title-related claims are not covered by the indemnification clause.

Accordingly, the Perkins Defendants' Motion for Summary Judgment is **DENIED**, and the Lessee Defendants' Motion is **GRANTED** on Perkins Defendants' Count VII.

## V.     CONCLUSION

For the reasons above, the Perkins Defendants and Lessee Defendants' Joint Motion to Dismiss (ECF No. 190) is **DENIED as moot** and Long Point's Motion to Strike (ECF No. 189) is **DENIED**.

As to the Motions for Summary Judgment (ECF Nos. 167, 168, 175, and 176):

- Summary judgment is **GRANTED** in favor of Long Point on its Counts I and II (declaratory judgment and quiet title) to the extent they are based on the Subdivision; on Perkins Defendants' Counts I, II, VI (declaratory judgment and quiet title) to the extent they are based on the Subdivision; and on Lessee Defendants' Counts I and II (declaratory judgment and quiet title). Summary Judgment is **DENIED** to all Defendants on these Counts to the same extent.

- Summary judgment is **GRANTED** in favor of the Lessee Defendants on their Counts III and IV (declaratory judgment and quiet title); in favor of the Perkins Defendants on their Counts I, II, and VI (declaratory judgment and quiet title) to the extent they are based on the 1.15-acre tract; and in favor of all Defendants on Long Point's Counts I–II and V–X to the extent they are based on the 1.15-acre tract.

- Defendants' Motions for Summary Judgment on their affirmative defense of laches are **DENIED** and Long Point's Motion for Summary Judgment regarding the same is **GRANTED**.

- Lessee Defendants' Motion for Summary Judgment as to liability for production before March 1, 2019 is **DENIED** and Long Point's Motion for Summary Judgment regarding the same is **GRANTED**.

- Lessee Defendants' Motion for Summary Judgment on Counts V (trespass) and Count VI (conversion) is **DENIED**.

- Lessee Defendants' Motion for Summary Judgment on Long Point's Counts VII and VIII (waste) is **GRANTED**.

- Perkins Defendants' Motion for Summary Judgment on Long Point's Count X (equitable disgorgement) is **GRANTED**.

- Perkins Defendants' Motion for Summary Judgment on its Count VII (indemnification) is **DENIED** and Lessee Defendants' Motion for Summary Judgment regarding the same is **GRANTED**.

Long Point's following claims remain for determination:

26

Count V:           Trespass
Against Lessee Defendants

Count VI:          Conversion
Against Lessee Defendants

Count IX:         Accounting of Rents and Profits
Against Lessee Defendants

Count X:          Unjust Enrichment and Equitable Disgorgement
Against Lessee Defendants

The parties are **ORDERED** to meet and confer and to file a proposed case schedule regarding damages discovery, any dispositive motions, and trial for these claims within **fourteen (14) days** from the date of this Order.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

27